Filed 11/16/21  P. v. Cardenas CA5

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>ULISES SANCHEZ CARDENAS,<br><br>Defendant and Appellant. | F080924<br><br>(Super. Ct. No. 1405767)<br><br>**OPINION** |

-ooOoo-

**THE COURT**[*]

APPEAL from a judgment of the Superior Court of Stanislaus County.  Ricardo Cordova, Judge.

Phillip M. Brooks, under appointment by the Court of Appeal; and Spolin Law, Aaron Spolin, for Defendant and Appellant.

Xavier Becerra, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Daniel B. Bernstein and Doris A. Calandra, Deputy Attorneys General, Respondent.

-ooOoo-

[*]    Before Poochigian, Acting P. J., Smith, J. and Meehan, J.

**INTRODUCTION**

Appellant Ulises Sanchez Cardenas was convicted of first degree murder (Pen. Code,[1] § 187, subd. (a)) and two counts of assault with a firearm (§ 245, subd. (a)(2)). The jury also found that Cardenas committed the offenses in association with a criminal street gang (§ 186.22, subd. (b)(1)). Cardenas was sentenced to an indeterminate term of 25 years to life plus a determinate term of 10 years.

In 2019, following the enactment of Senate Bill No. 1437 (2017-2018 Reg. Sess.) (Senate Bill No. 1437), Cardenas filed a section 1170.95 petition seeking to vacate his murder conviction. Following a hearing on the petition wherein Cardenas was represented by counsel, the superior court denied Cardenas's petition. On appeal, Cardenas contends the superior court erred by denying his petition without issuing an order to show cause and holding an evidentiary hearing on his entitlement to relief. We affirm.

**PROCEDURAL HISTORY**

On August 17, 2012, following a jury trial, Cardenas was sentenced by the Stanislaus County Superior Court to an indeterminate term of 25 years to life for first degree murder, a consecutive 10-year determinate term for a section 186.22, subdivision (b)(1), gang enhancement, two concurrent terms of two years each for assault with a firearm, and two concurrent five-year terms for the related section 186.22, subdivision (b)(1), gang enhancements.

On June 17, 2014, in *People v. Cardenas* (Jun. 17, 2014, F065841) [nonpub. opn.], this court affirmed Cardenas's judgment of conviction.

On January 1, 2019, Senate Bill No. 1437 became effective. (Stats. 2018, ch. 1015.) That measure amended sections 188 and 189 eliminating the felony murder rule and the natural and probable consequences doctrine. (Stats. 2018, ch. 1015, §§ 2, 3.)

---

**1** All undefined statutory citations are to the Penal Code unless otherwise indicated.

2.

On March 6, 2019, Cardenas filed a petition for resentencing under section 1170.95.

On February 5, 2020, the People filed a supplemental response to Cardenas's petition explaining that Cardenas was ineligible for relief under section 1170.95 because he had not been prosecuted or convicted under the felony murder rule or the natural and probable consequences doctrine. According to the People, Cardenas's liability for murder was predicated upon being the actual killer or having directly aided and abetted the murder, neither of which entitles him to resentencing relief under section 1170.95.

On February 10, 2020, following argument by the parties, the superior court denied Cardenas's petition finding that he had failed to make a prima facie case for relief under section 1170.95.

On February 28, 2020, Cardenas filed a timely notice of appeal.

**FACTS**

The following statement of facts is derived from this court's nonpublished opinion in *People v. Cardenas, supra,* [nonpub. opn.], which is part of the record on appeal. We only briefly summarize the facts underlying Cardenas's conviction in light of the issues before this Court:

On July 29, 2009, Cardenas, Isidro Carranza, and Rafael Lopez were driving in Carranza's mother's Ford Expedition in Modesto. When Cardenas and his companions arrived at a market near Boulder and Broadway, they observed a group of boys and girls, minors, standing outside. Cardenas, Carranza, and Lopez were affiliated with the Sureño criminal street gang, whereas the minors appeared to be affiliated with the Norteño street gang. Following a verbal confrontation, one of the minors pulled out a handgun and shot at the Expedition, striking the rear passenger area where Lopez had been sitting.

Cardenas instructed Carranza to drive to a nearby home to get a gun so that he could get payback for the shooting. Cardenas retrieved a backpack from a toolshed

3.

outside of a residence, got back into the front passenger seat of the Expedition, and removed a two-foot shotgun from the backpack. The group headed back to the market.

On the way, Cardenas saw a Chevy Caprice occupied by Albert Schopp and two companions. Carranza recognized Schopp from the neighborhood and considered him to be an enemy because Schopp was a Norteño. Schopp was not affiliated with the group that had shot at the Expedition.

Cardenas claimed "they" were already looking for "us" to "shoot us." Carranza followed the SUV until Schopp's vehicle stopped in the road. His engine had died. Carranza stopped behind him.

Cardenas told Lopez to duck, he loaded his firearm, and through his open window, Cardenas shot Schopp in the head, killing him. Cardenas instructed Carranza to drive. He cleaned the shotgun shell with a rag and tossed it out the window. Cardenas returned the firearm to the shed where it had been stored, and the group returned to Cardenas's house. Cardenas purchased a sticker to cover the bullet hole on the Expedition.

Cardenas was arrested the following morning. At trial, both Carranza and Lopez testified that Cardenas was the shooter.

*The Jury Instructions*

The jury was instructed that Cardenas could be found guilty of murder as the direct perpetrator of the shooting, or as an aider and abettor.

The jury found Cardenas guilty of the first degree murder of Schopp (count 1) and assault with a deadly weapon upon Schopp's companions (counts 4 and 5). The jury also found Cardenas had committed the offenses for the benefit of a criminal street gang. The jury did not find true allegations that Cardenas (1) personally and intentionally discharged a firearm and proximately caused great bodily injury or death; (2) personally used a firearm; and (3) personally and intentionally discharged a firearm and proximately caused great bodily injury.

4.

## ANALYSIS

Cardenas contends the superior court erred by failing to issue an order to show cause and to hold an evidentiary hearing on his entitlement to resentencing relief under section 1170.95. According to Cardenas, because he was convicted of murder based upon the natural and probable consequences doctrine, he is entitled to relief as a matter of law. His assertions are incorrect.

In 2018, the Legislature passed Senate Bill No. 1437, amending the felony murder rule and the natural and probable consequences doctrine in a manner that forecloses murder liability from being vicariously imposed on a person who is not the actual killer, did not act with the intent to kill, or was not a major participant in the underlying felony who acted with reckless indifference to human life. (Stats. 2018, ch. 1015, § 1, subd. (f); *People v. Gentile* (2020) 10 Cal.5th 830, 842.)

Senate Bill No. 1437 also added section 1170.95 to the Penal Code, creating a procedure for persons previously convicted of murder under the felony murder rule or the natural and probable consequences doctrine to petition the superior court for retroactive relief. Subdivision (a) of section 1170.95 sets forth the requirements for a facially sufficient petition. The petitioner must aver that: "(1) A complaint, information, or indictment was filed against the petitioner that allowed the prosecution to proceed under a theory of felony murder or murder under the natural and probable consequences doctrine. [¶] (2) The petitioner was convicted of first degree or second degree murder following a trial .... [¶] (3) The petitioner could not be convicted of first or second degree murder because of changes to [s]ection 188 or 189 made effective January 1, 2019." (§ 1170.95, subd. (a)(1)-(3).)

Upon receipt of a section 1170.95 petition for resentencing, the superior court "shall review the petition and determine if the petitioner has made a prima facie showing that the petitioner falls within the provisions of this section." (§ 1170.95, subd. (c).) In determining whether the petitioner has carried the burden of making the requisite prima

facie showing he or she falls within the provisions of section 1170.95 and is entitled to relief, the superior court properly examines the record of conviction, "allowing the court to distinguish petitions with potential merit from those that are clearly meritless." (*People v. Lewis* (2021) 11 Cal.5th 952, 971.) Appellate opinions "are generally considered to be part of the record of conviction." (*Id.* at p. 972.)

The prima facie inquiry under section 1170.95, subdivision (c), however, "is limited. Like the analogous prima facie inquiry in habeas corpus proceedings, ' "the court takes petitioner's factual allegations as true and makes a preliminary assessment regarding whether the petitioner would be entitled to relief if his or her factual allegations were proved. If so, the court must issue an order to show cause...." ' 'However, if the record, including the court's own documents, "contain[] facts refuting the allegations made in the petition," then "the court is justified in making a credibility determination adverse to the petitioner.' " (*Lewis*, *supra*, 11 Cal.5th at p. 971; see *People v. Daniel* (2020) 57 Cal.App.5th 666, 675, review granted Feb. 24, 2021, S266336 [any error in denying petition at prima facie stage without appointing counsel is harmless if the record of conviction " 'conclusively demonstrates' " petitioner is ineligible for relief].)

If the petitioner has made a prima facie showing (§ 1170.95, subd. (c)), the trial court "shall issue an order to show cause." (*Ibid.*) The trial court must then hold a hearing "to determine whether to vacate the murder conviction and to recall the sentence and resentence the petitioner on any remaining counts." (§ 1170.95, subd. (d)(1).)

Cardenas contends the superior court erred by failing to issue an order to show cause and to hold an evidentiary hearing. His assertions are meritless. These steps are predicated upon a petitioner's ability to demonstrate a prima facie entitlement to section 1170.95 relief (see § 1170.95, subd. (c)), which Cardenas did not do. Although Cardenas's sworn petition stated he was tried and convicted under the felony murder rule or the natural and probable consequences doctrine, the record of conviction refutes his

assertions. Thus, the superior court correctly denied Cardenas's petition without further proceedings.

As our Supreme Court has explained, "the prima facie inquiry under subdivision (c) is limited. Like the analogous prima facie inquiry in habeas corpus proceedings, ' "the court takes petitioner's factual allegations as true and makes a preliminary assessment regarding whether the petitioner would be entitled to relief if his or her factual allegations were proved. If so, the court must issue an order to show cause." ' [Citations.] '[A] court should not reject the petitioner's factual allegations on credibility grounds without first conducting an evidentiary hearing.' [Citations.] 'However, if the record, including the court's own documents, "contain[s] facts refuting the allegations made in the petition," then "the court is justified in making a credibility determination adverse to the petitioner." ' ' " (*Lewis, supra*, 11 Cal.5th at p. 971; see *People v. Drayton* (2020) 47 Cal.App.5th 965, 980, overruled on other grounds in *Lewis* ["the trial court should assume all facts stated in the section 1170.95 petition are true" unless they are "untrue as a matter of law" or refuted by the record and may not engage in "factfinding involving the weighing of evidence or the exercise of discretion"].) "If, accepting the facts asserted in the petition as true, the petitioner would be entitled to relief because he or she has met the requirements of section 1170.95[, subdivision] (a), then the trial court should issue an order to show cause." (*Drayton, supra*, at p. 980.)

Here, the record conclusively shows Cardenas was prosecuted as the direct perpetrator of the shooting or as an aider and abettor, but not under the natural and probable consequences doctrine, as Cardenas had claimed. In denying Cardenas's petition and declining to issue an order to show cause, the superior court made a credibility determination adverse to Cardenas. The superior court did not err in so doing.

Cardenas insists the jury was instructed on implied malice pursuant to CALCRIM No. 520, and that this instruction implicates the natural and probable consequences doctrine. Not so.

CALCRIM No. 520 is the generic instruction for murder which defines express and implied malice. "Although the instructions related to implied malice and the natural and probable consequences doctrine of aiding and abetting include similar language regarding a 'natural consequence,' they are distinctly different concepts." (*People v. Soto* (2020) 51 Cal.App.5th 1043, 1056, review granted Sept. 23, 2020, S263939.) "Unlike aiding and abetting implied malice murder, which requires the aider and abettor to (at least) share the mental state of the actual perpetrator of implied malice murder, ' "aider and abettor culpability under the natural and probable consequences doctrine is not premised upon the intention of the aider and abettor to commit the nontarget offense [e.g., murder] because the nontarget offense was not intended at all." ' " (*Id.* at p. 1058.)

We further observe that if Cardenas had been prosecuted under the natural and probable consequences doctrine, the trial court would have been obligated to identify a target offense. As our Supreme Court has explained, " 'when the prosecution relies on the "natural and probable consequences" doctrine to hold a defendant liable as an aider and abettor, the trial court must, *on its own initiative*, identify and describe for the jury any target offense allegedly aided and abetted by the defendant.' " (*People v. Soto, supra*, 51 Cal.App.5th at p. 1058.) The record contains no evidence the jury was instructed on a target offense.

Because Cardenas was not prosecuted under the natural and probable consequences doctrine, we do not address his remaining arguments. He is ineligible for resentencing relief under section 1170.95 as a matter of law. Consequently, Cardenas was not entitled to the issuance of an order to show cause or an evidentiary hearing.

## DISPOSITION

The superior court's order denying Cardenas's section 1170.95 petition for resentencing is affirmed.